2000 SD 155

ESTATE OF Timothy WILLIAMS, by its Personal Representative, Vonda WILLIAMS, Plaintiff and Appellant,

v.

Willard VANDEBERG and David Vandeberg, as Individuals, and Willard Vandeberg and David Vandeberg, a partnership, Defendants and Appellees.

No. 21352.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 2000.

Decided Dec. 20, 2000.

Rollyn H. Samp, Sioux Falls, SD, Attorney for plaintiff and appellant.

Rick Ribstein, Brookings, SD, Attorneys for defendants and appellees.

AMUNDSON, Justice.

[¶ 1.] Estate of Timothy Williams, by its personal representative Vonda Williams, appeals the trial court's dismissal of its claim of vicarious liability against Willard and David Vandeberg, the brothers of the tortfeasor, Elmer Vandeberg. We affirm.

## FACTS

[¶ 2.] On November 14, 1996, a collision occurred between Timothy Williams and Elmer Vandeberg at the intersection of County Roads 10 and 3A in Moody County, South Dakota. At the time of the collision, Elmer was driving a 1993 Ford pickup, which he owned and insured. As a result of the accident, Williams was killed. On January 15, 1997, Vonda Williams brought a lawsuit as personal representative of the estate of Timothy against Elmer. That lawsuit was settled for $100,000 on January 26, 1998, between Williams and Elmer's insurance carrier.

[¶ 3.] The settlement agreement included a full and final release of all claims against Elmer. The release signed by all parties to the lawsuit provided Elmer Vandeberg with the right of indemnity against Williams for any and all claims of any other person, which would arise out of the underlying collision. The release also provided that Williams would indemnify and hold harmless Elmer for any and all costs and attorneys' fees incurred in connection with any claim for contribution, indemnity, or subrogation. The release also included an express reservation to sue Willard and David Vandeberg, stating: "Releasors do not intend to release or diminish or in any way limit their claim for damages arising out of this accident and death, directly or indirectly, against Wil-

lard VanDeBerg and David VanDeBerg, individually and as partners."

[¶ 4.] In December 1997, Williams filed a second suit. This time Williams filed suit against Willard and David Vandeberg arising out of the same 1996 collision. The Complaint filed by Williams alleged that Elmer was an agent/employee of Willard and David Vandeberg. The Complaint further alleged that Willard and David Vandeberg were vicariously liable[1] as principals or employers of Elmer because of Elmer's alleged fault, which resulted in the death of Timothy Williams.

[¶ 5.] On July 21, 1999, Williams filed a Motion for Summary Judgment and requested that the trial court find as a matter of law that Elmer was an agent of his brothers. Willard and David Vandeberg countered with their own Motion for Summary Judgment on September 15, 1999. Their motion sought judgment on the issues that Elmer was a "protected person" under SDCL 29A–5–414 and that the release of Elmer was ·also a release as to Willard and David.

[¶ 6.] On October 18, 1999, a hearing was held regarding the motions for summary judgment filed by each party. The trial court entered a written ruling dated October 20, 1999, holding that Elmer was not a "protected person" under SDCL 29A–5–414, but did, however, grant summary judgment in favor of Willard and David on the release issue. Williams appeals raising the following issue:

> Whether, based on respondeat superior or vicarious liability, a release of an agent/employee (Elmer) is the release of the principal/employer (Willard and David) when there is an express reservation to sue the principal/employer.

## STANDARD OF REVIEW

[¶ 7.] A trial court may grant summary judgment only when there are no genuine issues of material fact. SDCL 15–6–56(c); *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987). The moving party bears the burden of showing the absence of genuine issues of material fact. *Id.* In resisting the motion, the non-moving party must present specific facts that show a genuine issue of fact does exist. *Ruane v. Murray*, 380 N.W.2d 362 (S.D.1986). Mere allegations that are devoid of specific facts will not prevent the issuance of summary judgment. *Western Cas. & Sur. Co. v. Gridley*, 362 N.W.2d 100 (S.D.1985). If no issue of material fact exists, then any legal questions may be decided by summary judgment. *Bego, supra*. When determining whether a genuine issue of material fact exists, the evidence must be viewed most favorably to the non-moving party and reasonable doubts are to be resolved against the moving party. *Groseth Int'l, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987). While this Court has always adhered to the notion that "summary judgement is an extreme remedy," it should be awarded when there is an absence of material fact at issue and "the truth is clear." *State of South Dakota, Dept. of Rev. v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989).

## DECISION

**Whether, based on respondeat superior or vicarious liability, a release of an agent/employee is the release of the principal/employer when there is an express reservation to sue the principal/employer.**

[¶ 8.] This issue presents a case of first impression in South Dakota. There is a split of authority in other jurisdictions that have addressed this same issue. The majority of jurisdictions have held that a principal/employer is released from liability when the agent/employee is released via a settlement agreement.

---

1. The Restatement defines the vicarious liability of an employer: A master is subject to liability to third persons injured in their business relations by the tortious conduct of a servant acting within the scope of employment or, if apparent authority is relevant, acting within his apparent authority. Restatement (Second) of Agency § 248 (1958).

[¶ 9.] The general rule is a release acts as an impediment to recovery for all claims arising from the tortfeasor's conduct. *Flynn v. Lockhart*, 526 N.W.2d 743 (S.D.1995); *cf.* Uniform Contribution Among Joint Tortfeasors Act (SDCL 15–8–11 to 15–8–22). This case, however, is different from most in that it involves an express reservation to sue non-tortfeasors, Willard and David Vandeberg. Thus, it is not a tortfeasor being sued as in *Flynn,* but rather non-tortfeasors that were not party to the release were being sued. This distinction, however, does not automatically prevent the application of the general rule to this case as *all* claims arise out of Elmer's sole act of negligence.

[¶ 10.] Nearby jurisdictions have had the opportunity to examine releases similar to the release in this case. In *Biddle v. Sartori Mem. Hosp.*, 518 N.W.2d 795 (Iowa 1994), a female emergency patient was negligently released from the hospital by her doctor. She died later that day from heart failure. The legal representative of the plaintiff/patient released the doctor from liability after a substantial settlement had been reached. Her estate then sued the hospital claiming that it was vicariously liable for the doctor's negligence.

[¶ 11.] The Iowa Supreme Court determined that without independent negligence alleged by the plaintiff or it being alleged as a joint tortfeasor case, the plaintiff failed to address "the limitations inherent in a claim that rests on the doctrine of vicarious liability." *Biddle, supra*, at 798. Like the Supreme Court of North Dakota, the Iowa court went on to articulate vicarious liability this way:

> The "percentage of negligence" attributable to the conduct of the servant constitutes the entire "single share" of liability attributable jointly to the master and servant. . . . Because this percentage of negligence represents the "single share" of liability covered by the common liability of the master and servant, the master is necessarily released from vicarious

liability for the released servant's misconduct.

*Id.* (citing, *Horejsi v. Anderson,* 353 N.W.2d 316, 318 (N.D.1984)). The Iowa court went on to explain "vicarious liability derives solely from the principal's legal relation to the wrongdoer, settlement with the tortfeasor removes the basis for any additional recovery from the principal upon the same acts of negligence." *Id.* A "single share" theory for liability results in the treatment of both agent and principal as one. Thus, a "settlement with an agent effectively adjudicates and satisfies the vicarious claim." *Id.* Therefore, the plaintiff cannot recover against the principal once recovery against the agent has been completed.

[¶ 12.] The Iowa court also subscribes to the notion than an inapposite outcome would result in circuity of action and multiplicity of lawsuits. The court concluded:

> [s]uch an outcome would clearly advance the goal of voluntary settlement of controversies favored by law. This is because of the well settled rule that a principal found vicariously liable for the negligent acts of an agent retains a right of full indemnity against the actual tortfeasor. The potential enforcement of such right . . . would clearly have discouraged rather than encouraged settlement.

*Id.* at 799 (internal citations omitted). The rationales of preventing circuity of action and encouragement of settlement complement one another. The complementary aspects of both rationales serve another important goal: finality. Public policy favors finality, thus avoiding circuity of action that is merely derivative and secondary.

[¶ 13.] Like Iowa, Michigan has also determined that release of the agent is release of the principal even when an express reservation to sue is present. In *Theophelis v. Lansing General Hospital,* 430 Mich. 473, 424 N.W.2d 478 (1988), plaintiffs, the personal representative of

the decedent and the decedent's parents, signed a release absolving any future liability against a doctor and nurse. Within the release, an express reservation was present allowing for recourse against anyone except those specifically released. Thus, plaintiffs were under the impression they could sue the hospital based on the express reservation.

[¶ 14.] The Michigan Supreme Court poignantly stated that "[a]t common law a valid release of an agent for tortious conduct operates to bar recovery against the principal on the theory of vicarious liability, even though the release specifically reserves claims against the principal." *Theophelis, supra,* at 480 (citing, 53 Am. Jur.2d, Master and Servant, § 408 at 416–18; 126 ALR 1199; 76 CJS, Release, § 50 at 89). The Michigan court explained that "the principal, having committed no tortious act, is not a 'tortfeasor' as the term is commonly defined," thus the release of the culpable party extinguishes any liability of the non-guilty principal. *Id.* (citing Black's Law Dictionary (5th ed.) (defining a tortfeasor as "a wrong-doer; one who commits or is guilty of a tort")). Like the Iowa court, the Michigan court concluded that the plaintiffs are without recourse against the hospital on the theory of vicarious liability, even with the inclusion of an express reservation within the release.[2]

[¶ 15.] We are persuaded by the rationale set forth by the aforementioned cases holding a release of an agent is a release of the principal even when the release contains an express reservation and where the claim is premised on the single act of the agent. *Theophelis,* 430 Mich. 473, 424 N.W.2d 478 (1988); *Dickey,* 188 Neb. 420, 197 N.W.2d 385 (1972). The majority of jurisdictions have determined that if they were to hold otherwise, circuity of action would follow. See *L.C.,* 1997 ND 96, 563 N.W.2d 799 (1997); *Reedon,* 418 N.W.2d 488 (Minn.1988); *Horejsi,* 353 N.W.2d 316 (N.D.1984). Our holding today fosters the principle of finality while attempting to limit circuity of action and multiplicity of lawsuits, which in this Court's wisdom, is the fairer result.[3] Therefore, summary judgment was appropriate.

[¶ 16.] We also have considered the other issues brought by Williams and find them without merit.

[¶ 17.] Affirmed.

[¶ 18.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.

---

**2.** Nebraska has also held that release of the agent is release of the principal. *L.C. v. R.P.,* 563 N.W.2d 799 (1997); *see also Dickey v. Estate of Meier,* 188 Neb. 420, 197 N.W.2d 385, 388 (1972). The Nebraska Supreme Court agreed with North Dakota's resolution in this type of matter in Horejsi. The Nebraska Court agreed:

> [t]he release of a servant for tortious acts also released the master from vicarious liability[.] Our decision [is] premised on avoiding a circle of indemnity that would have resulted if the release of the servant did not also release the master from vicarious liability.

*Id.* at 801, (citing *Horejsi, supra,* at 318); *see also Reedon of Faribault, Inc., v. Fidelity and Guaranty Ins. Underwriters, Inc.,* 418 N.W.2d 488, 490 (Minn.1988).

**3.** If we were to hold otherwise, then Williams may proceed against Willard and David Vandeberg in a subsequent suit and collect a judgment. Accordingly, Willard and David could then in-turn sue Elmer Vandeberg for indemnity. *Degen v. Bayman,* 86 S.D. 598, 200 N.W.2d 134 (1972) (*Degen I*). In the suit brought by Willard and David against Elmer, Williams, according to the terms of the release, would have to defend Elmer against Willard and David's claim. Such circuity of action and multiplicity of lawsuits can be readily avoided by implementing a rule where a release to one is a release to all.